**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY DONALD REID,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:10-cv-00058** |
| | ) | |
| **MICHAEL ASTRUE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Jeffrey Donald Reid's Motion for Judgment on the Administrative Record (Doc. No. 17), seeking judicial review of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and IV of the Social Security Act (the "Act"), respectively, on the grounds that the ALJ erred as a matter of law in rejecting the opinion of Plaintiff's treating physician, and that the ultimate decision is not supported by substantial evidence in the record. He seeks reversal or, in the alternative, remand pursuant to sentence four of 42 U.S.C. § 405(g).

The prior referral of this case to the Magistrate Judge will be withdrawn. For the reasons explained herein, the Court finds that the ALJ did not err in rejecting the opinion of Plaintiff's treating physician and that the Commissioner's decision is supported by substantial evidence in the record. Plaintiff's motion will therefore be denied, the Commissioner's decision affirmed, and this matter dismissed.

## I. BACKGROUND

### A. Procedural history

Plaintiff applied for DIB on April 25, 2007, alleging disability beginning October 31, 2006. (*See* Doc. No. 13, Certified Transcript of Administrative Record ("AR") 105–15.) His claims were denied initially and upon reconsideration. (AR 44, 50–53, 48, 59.) Upon Plaintiff's request, a hearing was conducted on August 11, 2009 before Administrative Law Judge ("ALJ") Andrew G. Sloss. The ALJ issued his decision denying Plaintiff's claim on October 5, 2009. (AR 5–19.) Plaintiff's request for review by the Appeals

Council was denied on May 21, 2010, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action on June 23, 2010, seeking review of that decision pursuant to 42 U.S.C. § 405(g).

### B. Plaintiff's Age, Education and Work Experience

Plaintiff was born in 1968 and was forty-one years old at the time of the hearing. He completed high school and two years of studies at a community college. (AR 23.) He has prior relevant work experience as a forklift driver and deliveryman at a metal company. His last-insured date for purposes of the DIB claim is March 12, 2012. He has not performed substantial gainful activity since the alleged onset date of October 31, 2006.

### C. Plaintiff's Medical Treatment History

Because of the focused nature of the Plaintiff's argument, a brief overview of his medical history, rather than an exhaustive account, will suffice. In general, prior to the alleged onset date, Plaintiff had already received conservative treatment for Crohn's disease or inflammatory bowel disease, back pain, abdominal pain, mental health disorders, arthritis, and a hiatal hernia. He was diagnosed with possible early rheumatoid arthritis in 2002 (AR 379), but the record does not contain a confirmed diagnosis of rheumatoid arthritis. His diagnosis of Crohn's disease is also not confirmed and, as of the date of the hearing, he was not taking medication for that condition. He underwent a cholecystectomy and hernia repair at the same time in November 2005. (AR 242–302, 308–87.) He had at least four spinal MRIs between 1997 and 2005: one in July 1997 (AR 213); another on June 25, 2002 (AR 337); one on July 29, 2003 (AR 384); and one on April 15, 2005 (AR 285–86). The 1997 MRI showed "[n]ormal appearing" lumbar spine. (AR 213.) The doctor's impression of the 2002 MRI was of "mild disc desiccation" at the L2-3 level, as well as a posterior left disc herniation at L2-3 level with mild left lateral recess narrowing, and a posterior left lateral disc protrusion at the L4-5 level resulting in left neural foraminal narrowing. Otherwise, "[t]he remainder of the vertebral bodies, disc spaces, central canal and facet joints appear[ing] normal." (AR 337.) The 2003 MRI was essentially unchanged from the 2002 scan, and the physician reviewing the scan specifically noted no evidence of spondylolisthesis or spondylosis. (AR 384.) Neurologist Joseph Jestus explained at that time that the flare-up of back pain that he had been experiencing was "not from radiculopathy from a herniated disc" and that Plaintiff would not benefit from

surgery.  (AR 334.)  Rather, the pain was from degenerative disc disease, the treatment for which consisted of anti-inflammatory medications and activity modification.  (AR 334.)  The 2005 exam showed no abnormalities of the thoracic spine (AR 285), and at the lumbar level showed "very minimal loss of vertebral height" at L4-5 and a "suggestion of a subtle left articular disc protrusion . . . [that] may impinge on the exiting left L4 nerve root"; and disc desiccation with a "broad-based posterior annular bulging" at L2-3, with no loss of vertebral height.  (AR 286.)  The reviewing physician at that time, Dr. Vaughan Allen, noted that the MRI showed "a fair amount of degenerative disc disease" along with a small disc protrusion, and recommended epidural steroid shots and an exercise program.  (AR 349.)  Plaintiff was not considered to be a candidate for surgery.  Plaintiff continued to work at that time, though he contends he was missing a lot of work because of back pain.

On March 31, 2005, Plaintiff's treating physician, Dr. Seitzinger, noted that Plaintiff "has a complicated form for me to fill out today based on what is wrong with him and how it is affecting his work."  (AR 326.)  Dr. Seitzinger noted:

> Well this patient has disc disease.  He has back pain and his back pain is in the context of an MRI done on 7/39/03 in which it was found he had an extruded herniated disc at L2-L3 on the left as well as at L4-L5 on the left and it has gotten worse.  His pain has gotten so bad he can't lift more than 10lbs.  He can't sit, stand or walk for more than an hour without interruption and this is because of back pain that goes into his buttock and into his leg.  He is going to have to see a neurosurgeon and as a result of this get assessed after seeing a neurosurgeon who did not given him any surgical option he is going to get another opinion. [Sic.]  I filled out all his forms.

(AR 326.)

As of Plaintiff's alleged disability-onset date in October 2006, his treating physician, Dr. Seitzinger, had treated Plaintiff for years for back pain and his other ailments, and regularly refilled his prescriptions for Hydrocodone, among his other medications (including Xanax and Zoloft for anxiety and depression).  At various times, Dr. Seitzinger noted that Plaintiff's back pain had flared up, that Plaintiff rated it a 10 out of 10, and that outpatient treatment was not working (*see, e.g.*, AR 327), but at other times the treatment notes contain no mention of back pain; instead, the doctor notes Plaintiff was doing well and engaging in activities such as volleyball.  (*See, e.g.*, AR 328.)  On April 6, 2006, Dr. Seitzinger noted:  "low back pain," "stress anxiety" and "can't work."  (AR 317.)  He also noted the same day "FMLA" and "short term disability."  (AR 319.)

From the middle of 2007 through 2008, Plaintiff continued to seek regular treatment and

medication refills from Dr. Seitzinger, who repeatedly noted that Plaintiff complained of joint pain, low back pain, chronic abdominal pain, anxiety and depression. Dr. Seitzinger continued to prescribe Hydrocodone/APAP 7.5/500 for pain control, as well as Protonix, Xanax and Zoloft.

A colonoscopy in April 2008 showed no sign of Crohn's disease. The doctor who performed the procedure, Dr. Phillip Bertram, noted: "I plan to evaluate his previous records and see why he was told he had Crohn's disease in the first place." (AR 526.)

Another lumbar spine MRI was performed on May 5, 2008, which showed posterior osteophytes (bone spurs) at L2-3, disc desiccation at L2-3 and L4-5, minimal scoliosis, and a small benign hemangiomata in the L2 vertebral body. It did not show any disc herniation or significant spinal stenosis. (AR 518.) Plaintiff was examined again by neurologist Dr. Jestus on May 30, 2008, on a referral from Dr. Seitzinger. Dr. Jestus noted that back pain had "developed acutely" about six weeks previously but had improved since then. Plaintiff described it as aching, not radiating, waxing and waning in severity, aggravated by bending. At that time, Plaintiff denied recreational drug use, and was on prescription medications including Hydrocodone/Acetaminophen 7.5/500, Protonix, Xanax, and Zoloft. On physical exam, he was noted to have normal strength, muscle tone and muscle bulk in his lower and upper extremities. His reflexes were normal and symmetrical, he had a normal gait, was able to stand without difficult, walk without assistance, and perform a heel-to-toe straight line walk without difficulty. (AR 486.) Dr. Jestus diagnosed "[r]esolved Lumbar region disc disorder," and assessed Plaintiff as having non-operative back pain, based on his conclusion that Plaintiff was neurologically normal and ambulatory. (AR 487.) In his letter to Dr. Seitzinger thanking him for the referral, Dr. Jestus noted that Plaintiff's history and physical exam were consistent with an "acute disc bulge at L4/5, without significant nerve root impingement" and that "[h]is pain is just about gone now." (AR 488.)

The record contains some evidence that Plaintiff attempted mental health counseling to address his depression, but it appears he only attended a few sessions during the spring of 2008. (AR 535–46.) He was discharged for noncompliance with treatment.

### D. Functional Capacity Assessments

Jeffrey Scott Herman, SPE, performed a psychological evaluation on July 23, 2007. Plaintiff reported to Herman that he had quit working at Fleetguard in 2006 because he "had had all [he] could

handle," referring to interpersonal conflicts with coworkers, and working nightshifts. (AR 422.) After leaving Fleetguard, he worked two or three months driving a dump truck until he was laid off in September 2006. He had applied elsewhere but not found work. (AR 422.) For medications, he reported taking Protonix for heartburn and reflux, Zoloft for depression, Alprazolam for stress and panic attacks (1 mg, two to three times daily); Hydrocodone/APAP 7.5/500 t.i.d. for back pain, knee pain, and Crohn's disease. He reported a history of marijuana use, ending one to two years ago, and continued periodic use of cocaine (once every two to three months, whenever he can afford it). (AR 424.) He reported his daily activities as including, if he "had work to do," getting up between 6:00 and 7:00 a.m., and if not, around 9:00 or 10:00 a.m. The work is "around the house, there." He helps his mother with housework; he walks his golden retriever most days. In the afternoon he goes out to get a newspaper. In the evenings he does not go out much but has family members living close by with whom he visits frequently. (AR 424.) The examiner concluded that Plaintiff had intact short-term memory, well developed ability to concentrate, and grossly intact judgment. Asked what had changed since the previous September that made him unable to work, Plaintiff reported that his "physical condition" had changed, and that he could work for a period of time, but "joint pain eventually stops him" and his back is getting worse. (AR 426.)

Plaintiff was diagnosed as having depressive disorder not otherwise specified and panic disorder without agoraphobia, in sustained remission with medication. He was considered to get along with others well enough to hold competitive employment, and to be capable of adapting to the work setting and using public and private transportation. Because of his ongoing intermittent substance abuse, it was recommended that any funds that might be awarded be managed by a competent third party.

A Psychiatric Review Technique form completed by Thomas D. Neilson, Psy.D., on September 21, 2007, to cover the period from October 31, 2006 through September 5, 2007, indicated that a mental-health RFC assessment was necessary to assess the impact of Plaintiff's affective, anxiety-related, and substance-addiction disorders. In the Mental RFC completed the same day, Dr. Neilson indicated Plaintiff was moderately limited in his ability to (1) work in coordination with or proximity to others without being distracted by them; (2) complete a normal workweek and workday without interruptions from psychologically based symptoms; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without

distracting them or exhibiting behavioral extremes; (6) respond appropriately to changes in the work setting; and (6) set realistic goals or make plans independently of others. Dr. Neilson did not find substantial limitations in the other thirteen areas of functioning assessed. Dr. Neilson opined that Plaintiff could understand and remember simple and detailed, non-complex tasks; sustain concentration and persistence for those tasks despite periods of increased signs and symptoms; would experience some but not substantial difficulty interacting with the general public, co-workers, and supervisors; and could set limited goals and adapt to infrequent change. (AR 458–59.)

Agency consultant Dr. Jerry Lee Surber performed a medical examination on August 1, 2007. Dr. Surber's clinical impressions included: moderate obesity; shortness of breath on minimal exertion consistent with chronic obstructive pulmonary disease (he noted Plaintiff has smoked one-half to one or more packs of cigarettes per day for five or more years, plus occasionally smoking marijuana and cocaine); a reported history of ongoing depression and anxiety with bipolar disorder and panic attacks in addition to gastroesophageal reflux disease, irritable bowel syndrome, Crohn's disease, and hypertension, for all of which Plaintiff continued to take or had taken daily prescribed medications as directed; abdominal pain (but abdomen was non-tender on palpation during that day's examination); joint pain, stiffness and fatigue, with subjective complaints of pain in neck, shoulders, low back and knees, but with no functional or mobility limitations in any of these joints during the examination, no limping or antalgic gait, and no use of an assistive device. Based on these impressions and the examination as a whole, Dr. Surber assessed Plaintiff as able to frequently lift or carry at least ten to twenty-five pounds for one-third to two-thirds of an eight-hour workday, and to stand, walk, or sit for up to six to eight hours in an eight-hour workday. (AR 433.)

A Residual Functional Capacity ("RFC") assessment based on a review of Plaintiff's medical records was completed on August 30, 2007 by Marvin H. Cohn, M.D. Dr. Cohn assigned even fewer limitations than Dr. Surber, whose opinion Dr. Cohn believed to be too restrictive. Dr. Cohn opined that Plaintiff could occasionally lift up to fifty pounds, and frequently lift up to twenty-five pounds. The only substantial limitation Dr. Cohn noted was that Plaintiff would need to avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc. (although he observed that Plaintiff had never been positively diagnosed with COPD). He noted that the Plaintiff had mild degenerative disc disease, that his Crohn's

disease diagnosis was not confirmed and in any event the Plaintiff had gained twenty pounds in the last few years.  (AR 442.)

Another physical RFC conducted as of March 12, 2008 by James N. Moore, M.D., reached identical conclusions, and also indicated that Dr. Surber's assessment was "too restrictive" (AR 483) and that the COPD diagnosis was not supported by the record.  Dr. Moore also noted that Dr. Seitzinger's opinion that Plaintiff was disabled, restated periodically in his treatment record, invaded the province of the Commissioner.  (AR 483.)  Upon review of the record and Dr. Surber's examination, Dr. Moore concluded that Plaintiff's complaints of pain were "partially credible," in light of his history of degenerative disc disease, Crohn's disease, and obesity.  He also noted no evidence of disabling weight loss as a result of Crohn's disease.

Plaintiff's treating physician, Dr. Seitzinger, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) for Plaintiff on July 23, 2009.  The instructions for filling out the form include a statement in bold, capitalized letters toward the top of the first page, as follows:

> **IT IS VERY IMPORTANT TO DESCRIBE THE FACTORS THAT SUPPORT YOUR ASSESSMENT.  WE ARE REQUIRED TO CONSIDER THE EXTENT TO WHICH YOUR ASSESSMENT IS SUPPORTED.**

(AR 597.)  In filling out the form, Dr. Seitzinger first listed the impairments from which Plaintiff suffered, including low back pain, depression, rheumatoid arthritis, Crohn's disease, and abdominal pain.  Dr. Seitzinger indicated Plaintiff was limited by these conditions to lifting no more than ten pounds occasionally and less than ten pounds frequently, standing and/or walking less than two hours in an eight-hour work day, and sitting about four hours in an eight-hour work day.  He stated that Plaintiff was limited in his ability to push and pull with his lower extremities due to low back pain; that he would be required to periodically alternate between sitting and standing; that Plaintiff frequently experienced pain severe enough to interfere with his attention and concentration; that he was incapable of even a low stress job; that he would need to take more than four unscheduled breaks per work day; that he would be absent from work more than four times per month as a result of his impairments or treatment thereof; that he should never engage in postural activities such as climbing, balancing, kneeling and so forth; that he was limited in reaching in all directions and in handling and should only do these things occasionally; and that he should avoid exposure to extreme heat and cold, noise, vibration, humidity, dust, fumes and odors,

perfume, solvents and cleaners, chemicals, and cigarette smoke.  In the spaces on the form where Dr.

Seitzinger was asked what medical/clinical findings supported these conclusions, Dr. Seitzinger simply

listed Plaintiff's symptoms, including low back pain, joint pain, morning stiffness, abdominal pain.  In one

instance he added "generalized weakness" and in another he mentioned "some shoulder pain."  (AR 598,

599, 600.)  He did not make reference to his treatment notes.

## II.    THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his decision dated October 5, 2009, the ALJ made the following specific findings:

1.    The claimant meets the insured status requirements of the Social Security Act through March 12, 2012.

2.    The claimant has not engaged in substantial gainful activity since October 31, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

. . . .

3.    The claimant has the following severe impairments:  degenerative disc disease, and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 505.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c),[1] including frequently climbing, balancing, stooping, crouching, kneeling and crawling.  Further, he can understand and remember simple and detailed non-complex tasks; he can sustain concentration and persistence for the simple and detailed non-complex tasks despite periods of increased signs and symptoms.  He will experience some but not substantial difficulty interacting with the general public, supervisors, and co-workers.  He can set limited goals and adapt to infrequent changes.

. . . .

6.    The claimant is capable of performing past relevant work as a forklift driver.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. . . .

7.    The claimant has not been under a disability, as defined in the Social Security

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

Act, from October 31, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 10–18.)

## III. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and therefore entitled to benefits. 42 U.S.C. § 405(h). This Court must affirm the Commissioner's conclusions absent a determination that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997); 42 U.S.C. § 405(g). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978)

The substantial-evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

### B. The Social Security Act and Disability

The central issue on appeal is whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the relevant time period. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

In making a determination as to disability under the above definition, an ALJ is required to follow the five-step sequential evaluation set out in the Social Security Administration's regulations. 20 C.F.R. § 404.1520.[2] The burden of proof is on the claimant through the first four steps; the burden shifts to the Social Security Administration in step five. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). However, the claimant always bears the ultimate burden of proving that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a).

Step one of the sequential process requires determining whether the claimant is engaging in substantial gainful activity. If not, the inquiry moves to step two, which determines whether the claimant's impairments, individually or in combination are "severe." If a severe impairment is found, step three asks whether the claimant's impairment meets or medically equals the requirements of any impairment in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is not of listing-level severity, then step four asks whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. If the claimant shows that she cannot perform past relevant work because of impairments, the Social Security Administration, in step five, must then identify other jobs existing in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4). If at any point it is determined that the claimant is or is not disabled, the inquiry stops. *Id.* For example, if the ALJ determines at step four that the claimant can perform past relevant work, the ALJ need not complete the sequential analysis. *See id.*

IV.    **LEGAL ANALYSIS**

In determining Plaintiff's RFC, the ALJ stated that he had "carefully consider[ed] the entire record" and "all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (AR 16.) With reference specifically to Dr. Seitzinger's

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 et seq.

opinion as to Plaintiff's functional capacity, the ALJ noted that "the doctor's progress notes appears [sic] to contain inconsistencies regarding such limited function by function limitations, and the doctor's opinion is accordingly rendered less persuasive. Also, his opinion contrasts sharply with the other evidence of record such as treating specialists, Dr. Jestus, the treating neurosurgeon, which renders Dr. Seitzinger['s] opinion less persuasive when the doctor indicated in May 2008 that the claimant's lumbar disc problem was 'resolved' and that 'his pain is just about done now.'" (AR 17 (citing Exhibit 25F).)

The ALJ also found that Plaintiff in general had "credibility" issues (AR 16) as a result of which his subjective complaints of pain were not entirely credible. Specifically, the ALJ noted that Plaintiff stated he last worked in 2007, but wage records and medical records indicate he worked part time for a period in 2008 and possibly 2009. He stated he had not used cocaine for several years, but treatment records from February 2008 indicate he was "not good with money especially when on cocaine," which the ALJ interpreted as indicating recent and continuing use of cocaine. The ALJ also found Plaintiff's subjective complaints of pain were only partially credible in light of his ability to perform a variety of daily activities, including visiting frequently with family members, engaging in various hobbies as reflected in the medical records, and working on occasion when he needed the money. The ALJ noted that he accepted that Plaintiff had not performed substantial gainful activity since the alleged onset date, but that Plaintiff's occasional work activity "indicate[d] that his daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (AR 17.) Accordingly, the ALJ gave "great weight" the State agency opinions and agreed with them that Dr. Surber's opinion was too restrictive as well, and therefore concluded that Plaintiff was capable of performing medium work.

Plaintiff contends that the ALJ erred in rejected Dr. Seitzinger's opinion ascribing limitations that would not permit Plaintiff to perform substantial gainful activity, even at the sedentary level. He specifically contends that Dr. Seitzinger's opinion is sufficiently supported by medical findings and that, pursuant to Sixth Circuit law, the opinion of a treating physician, if supported by sufficient medical findings, is entitled to substantial deference. *Cutlip v. Sec'y of Health & Human Servs.*, 25 f.3d 284 (6th Cir. 1994). Plaintiff points out that Dr. Seitzinger has treated Plaintiff since June 2002, and since then has continuously diagnosed Plaintiff with low back pain, prescribed pain medications, and referred him to specialists. Plaintiff also takes issue with the ALJ's giving "great weight" the State agency reviewers'

opinions, dismissing not only Dr. Seitzinger's opinion but also that of Dr. Surber. Plaintiff claims the State consultants did not have the "full record" before them.

In response, the Commissioner argues that the ALJ's decision to reject Dr. Seitzinger's opinion was not in error because Dr. Seitzinger's opinion was inconsistent with the evidence and was not supported by the clinical record.

Social Security regulations require the agency to "give good reasons" for disregarding the medical opinion of a treating physician. 20 C.F.R. § 404.1527(d)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Medical opinions are defined as opinions about the nature and severity of an individual's impairment(s), 20 C.F.R. § 404.1527(a), and they are the only opinions that may be entitled to controlling weight. S.S.R. 96-2p, 1996 WL 374188 at *2. Such opinions must be "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques and "not inconsistent" with the other "substantial evidence" in the individual's case record. *Id.* If the Secretary rejects the medical opinion of a treating physician regarding the nature and severity of a claimant's complaints, she must articulate a good reason for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Sixth Circuit has also "consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993). An ALJ may reject a treating source opinion that is inconsistent with the medical evidence where the ALJ articulates good reasons for doing so. Further, in making disability determinations, the ALJ has a duty to resolve any conflicts in the medical evidence, and courts are bound to uphold such resolutions if they are supported by substantial evidence. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536–37 (6th Cir. 1981).

In the present case, under the factors listed in 29 C.F.R. §§ 404.1527(d) and 416.927(d), the ALJ gave good reasons for not giving controlling weight to Dr. Seitzinger's opinion. The regulations set forth the factors that are important to an ALJ's evaluation of a medical source's opinion, including (1) the examining relationship; (2) the treatment relationship; (3) the explanation and medical evidence used by the treating source to support his opinion; (4) the opinion's consistency with the record; (5) the physician's specialization, and (6) any other relevant factors the Plaintiff may raise. 20 C.F.R. §§ 404.1527(d);

416.9274(d). Dr. Seitzinger was Plaintiff's treating physician for many years, but he was not a specialist; the explanation and medical evidence cited in support of his opinion were patently insufficient; the record contained inconsistencies; and Plaintiff did not point to any other particularly relevant factors the ALJ should have addressed. The Court cannot say that the record does not support the ALJ's determination.

In addition, it is unclear whether Dr. Seitzinger's opinion qualifies in the first place as a "medical opinion" as defined in 20 C.F.R. § 404.1527(a), that would be entitled to any particular weight. Specifically, the problem with accepting the functional assessment form completed by Dr. Seitzinger as a "medical opinion" is that it consists of a form with certain boxes checked, and the only support offered for the limitations ascribed by Dr. Seitzinger is through referencing Plaintiff's diagnoses or symptoms (*e.g.*, "low back pain") which, in and of themselves, are not determinative of the degree of impairment resulting from those symptoms. The Court finds that Dr. Seitzinger's opinion, provided for purposes of this litigation, rendered by means of checking boxes and filling in blanks on a form regarding Plaintiff's ability to do work-related activities, was not entitled to substantial deference in light of the fact that Dr. Seitzinger made no attempt to support his opinions with reference to the medical record or his own treatment notes. *Cf. Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole.").

In sum, because the ALJ gave good enough reasons for rejecting Dr. Seitzinger's opinion, and because Dr. Seitzinger's opinion itself was not sufficiently supported with reference to the medical record, the Court concludes that the ALJ did not err in rejecting that opinion.

Further, although there also exists substantial evidence in the record to have supported a much more restrictive RFC, the ALJ's acceptance of the agency consultant's opinions as to Plaintiff's RFC is supported by substantial evidence in the record. As the Commissioner points out, despite Plaintiff's argument that the Agency consultants did not have the complete record before them at the time they rendered their opinions, the medical treatment records dated after their opinions (the second of which

was dated March 2008) support the ALJ's and their RFC determinations. (*See, e.g.*, AR 522, 524, 526 (April 24, 2008 reports from Dr. Bertram, noting that Plaintiff had "no sign of Crohn's disease"); AR 518, 520, 588, 590 (May 5, 2008 MRI showing osteophytes at L2-3, disc desiccation at L2-3 and L3-4, and mild lumbar scoliosis, but otherwise normal examination); AR 485–88 (Neurologist Dr. Jestus's May 2008 opinion indicating that that Plaintiff's acute pain that had developed about six weeks previously was resolved); AR 499–501 (August 14, 2008 consultative examination by Dr. Gary Reynolds after Plaintiff experienced heart palpitations, chest discomfort and dizziness, finding that Plaintiff had no significant abnormalities other than nonspecific chest pain and dyspnea). Thus, although the Agency consultants' opinions on which the ALJ primarily relied came before the creation of some of the medical records, they were entirely consistent the later reports.

"In appropriate circumstances opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996); cf. *Blakley v. Astrue*, 581 F.3d 399, 409 (6th Cir. 2009) (indicating that an ALJ may give greater weight to an agency consultant's opinion than a treating source opinion even where some evidence was not reviewed by the consulting physicians, where the ALJ considered all of the relevant facts before making a determination). In the present case, the Agency consultants considered all the evidence available to them at the time they rendered their decisions and their decisions were consistent with the more recent medical evidence that was not available when they conducted their review of the record. The ALJ reviewed all the evidence in the record and reasonably concluded that Dr. Seitzinger's opinion was inconsistent with his progress notes and the other medical evidence, and that the Agency consultant opinions were consistent with other evidence in the record. His opinion is supported by substantial evidence in the record.

## V.     CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's motion for judgment and enter judgment in favor of the Commissioner.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge